UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA MARTIN,

    Plaintiff,

v.                                          CASE No.  8:05-CV-764-T-TGW

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

_____

O R D E R

        The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence, the decision shall be affirmed.

I.

        The plaintiff, who was thirty-one years old at the time of the administrative hearing and who has an eleventh grade education, has worked as a housekeeper, a car lot porter, a retail store supervisor, and an office clerk (Tr. 67, 71, 98, 335, 337).  She filed claims for Social Security

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

disability benefits and supplemental security income, alleging that she became disabled due to lower and upper back pain, leg pain, panic attacks, migraine headaches, and a pinched nerve in her shoulder (Tr. 75). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff suffers from cervical and lumbar disc disease, right shoulder arthritis, depression, anxiety, and obsessive compulsive disorder, which are severe impairments (Tr. 19). The law judge determined that these impairments limited the plaintiff to a restricted range of light work (id.). Specifically, the law judge found that the plaintiff had the residual functional capacity to "lift no more than 20 pounds occasionally and a much lesser weight frequently, cannot engage in any reaching or lifting above shoulder level, requires a sit/stand option at will, cannot engage in any repetitive bending or stooping, cannot engage in any climbing, driving, or working at heights or with or around heavy or dangerous moving machinery, and can only perform simple routine repetitive tasks" (id.). Based upon the testimony of a vocational expert, the law judge decided that, within these limitations, the plaintiff could

return to her past work as an office clerk (Tr. 18). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(d)(2)(A).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402

U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

As indicated, the law judge concluded that the plaintiff suffers from multiple severe impairments that limit her to a reduced range of light work. Based upon the testimony of a vocational expert, the law judge

concluded that these impairments do not preclude her from performing her past job as an office clerk. The plaintiff argues that the law judge erred in making this determination.

A. The plaintiff argues first that the testimony of the vocational expert is flawed because it does not consider her limitation on reaching or lifting above-shoulder level and the option to sit or stand at will (Doc. 19, pp. 7-11). These arguments, however, lack merit.

It is well-established that, "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). In this connection, the plaintiff acknowledges that the law judge presented a hypothetical question to the vocational expert that restricted the plaintiff from over-the-shoulder reaching and lifting, and that provided her with an option to alternate sitting and standing (Doc. 19, p. 7; see Tr. 368).

The plaintiff argues that the law judge's hypothetical regarding the sit/stand option was inadequate because it did not include the words "at will," but instead contained a requirement to alternate sitting or standing (Doc. 19, pp. 9-11; Tr. 19, ¶6). She contends that the failure to include the words "at

will" is a critical error because "[a] person who would need to alternate sitting and standing would have the physical need to do some sitting, and some standing, during the course of the work day. A person who could exercise the sit/stand option at will could need to, [sic] sit all day, or stand all day" (Doc. 19, p. 9).

This argument is unpersuasive not only because it does not seem to make sense, but also because the discussion of the sit/stand restriction is taken out of context. Thus, as the plaintiff acknowledges, immediately prior to the law judge's questioning of the vocational expert, the law judge presented to the plaintiff a detailed hypothetical in which he asked the plaintiff if she could perform "[a] job [that] would allow [her] to work either in a sitting position, or a standing position, or alternate as [she] cho[o]se[s]. In other words, [she] could sit for as long as [she] want[s] to and ... conversely, stand for as long as [she] want[s], and then sit" (Tr. 366). This hypothetical clearly conveys the option to sit or stand at will. Importantly, the vocational expert was present during this testimony, and the law judge specifically confirmed with the vocational expert that he had heard that hypothetical (Tr. 368). Thus, the law judge asked the vocational expert the following (Tr. 368-69):

> Q: Do you recall the hypothetical that I presented to the claimant during testimony?
>
> A: Yes.
>
> Q: That hypothetical essentially provided for a restricted range of light work activity. Restricted by the need to alternate sitting and standing, the avoidance of over-the-shoulder reach or lift. And as the result of a combination of factors, non-exertionally would preclude all but lowest end semi-skilled or unskilled work. Is that correct?
>
> A: Yes, Your Honor.
>
> Q: ... assuming that such represents the Claimant's maximum Residual Functional Capacity, could the Claimant return to any of her prior jobs?
>
> A: I would say that she would be able to return to her past relevant work as an office clerk.

Thus, it is plain from the context of this discussion that the vocational expert was to consider the restrictions posed in the hypothetical to the plaintiff, and that the law judge's subsequent query to the vocational expert merely summarized, and did not change, those restrictions. Accordingly, the clear implication is that the vocational expert understood, and considered, that the plaintiff would require a job that allowed her to sit or stand "at will."[2]

---

[2]Moreover, I fail to see any distinction in a limitation that an individual be permitted to sit or stand at will and a limitation that an individual has "the need to alternate sitting and standing" (Tr. 368). In both circumstances, the employee has the option to sit or stand

The plaintiff also argues that the vocational expert's testimony is flawed because his response to the law judge's hypothetical regarding the over-the-shoulder limitation was not responsive, as it "posited a person who was incapable of overhead reaching"(Doc. 19, p. 8). However, the plaintiff has mischaracterized this testimony. Thus, in response to the law judge's hypothetical that the plaintiff's residual functional capacity requires the "avoidance of over-the-shoulder reach[ing] or lift[ing]" (Tr. 368), the vocational expert responded that the plaintiff "would be able to return to her past relevant work as an office clerk" (Tr. 369).

The plaintiff tries to make something of a comment by the vocational expert regarding overhead reaching. However, the comment was in response to the law judge's query about why the office clerk job was classified as light, rather than sedentary (id.). This comment does not pertain to, and thus does not alter, the vocational expert's unequivocal testimony that the office clerk job does not involve duties precluded by the plaintiff's residual functional capacity.

Buttressing this expert opinion is the fact that the plaintiff did not testify that her duties as an office clerk involved overhead or above-shoulder

---

when she wants.

-8-

reaching or lifting. In fact, when the plaintiff was asked why she was unable to return to her prior job as an office clerk, she did not mention either overhead or above-shoulder reaching or lifting (Tr. 347-48; see also Tr. 102). To the contrary, the plaintiff stated that the office clerk position probably imposed the lightest physical demands, but that "[n]ot being able to lay flat down" would prevent her from returning to that job (Tr. 347-48). She said subsequently that she would have difficulty performing the duties of an office clerk due to the sitting that was involved (Tr. 353). Therefore, the record does not reflect that a limitation of no above-shoulder reaching or lifting would preclude her from returning to her prior job as office clerk. See Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999), cert. denied, 529 U.S. 1089 (2000).

B. The plaintiff contends next that the vocational expert's opinion that she could return to her former job as an office clerk is not supported by substantial evidence because it does not consider the heavy lifting she did as an office clerk (Doc. 19, pp. 11-12).

The plaintiff's job duties as an office clerk were developed at the administrative hearing by her representative. The discussion between the plaintiff and her representative is as follows (Tr. 339):

> Q: What type of setting was [the office clerk job]?
>
> A: It's a window company. Answering the phones and setting the appointments for the customers to have a salesman come out and give them an estimate on windows.
>
> Q: So were you mostly just setting appointments, or were you doing other secretarial functions?
>
> A: Well, I filed papers and made sure everybody's bills were sent out when they were supposed to, as well as calling people and making the appointments.
>
> Q: Okay. So did your job generally center around the setting of appointments and calling and reminding people, that sort of stuff?
>
> A: Yeah, for the majority, yeah.
>
> Q: Okay. Were you having to do letters or things of that sort?
>
> A: I had to print out things to be sent out to the customers.
>
> Q: About their appointments?
>
> A: Yeah.

Based on the plaintiff's testimony, the vocational expert characterized her prior work as an office clerk job that is semi-skilled and involves light physical demands (Tr. 342).

The plaintiff argues that this opinion is inaccurate because it does not consider other duties she performed at this job that are listed in her Work History Report, such as unloading trucks, carrying windows, and frequently lifting items weighing twenty-five pounds (Tr. 102). However, neither the plaintiff nor her representative mentioned at the hearing that the plaintiff (who was pregnant at the time (Tr. 338)) lifted heavy objects as part of her duties as an office clerk, despite having ample opportunity to do so.[3]

In any event, as the Commissioner points out (Doc. 20, pp. 5-6), the law judge found that the plaintiff could do the office clerk job either as she performed it, or as it is performed in the national economy (see Tr. 18). "The regulations require that the claimant not be able to perform h[er] past *kind* of work, not that [s]he merely be unable to perform a specific job [s]he held in the past." Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986) (emphasis in original). In other words, it is sufficient if the plaintiff could return to a prior job as that job is performed in the national economy. The vocational expert testified that an office clerk job requires only occasional lifting of a

---

[3]The plaintiff attempts to circumvent responsibility for her representative's failure to elicit this testimony by arguing that the representative's "inquiry was abruptly cut short by the ALJ" (Doc. 19, p. 12). This argument is meritless. The record reflects that the law judge did interject questions to the plaintiff during the representative's examination, but there is no reason why he could not have returned to this line of questioning after the law judge finished his inquiry.

maximum of ten pounds, and that it does not exceed the plaintiff's residual functional capacity (Tr. 369). This testimony supports the finding that the plaintiff could perform the job of office clerk as it is performed in the national economy.

In a related argument, the plaintiff challenges the law judge's decision that she could return to work as an office clerk because her prior work was actually a "composite job" for which she is not capable of performing all of the duties (Doc. 19, p. 13). This argument apparently relates to the plaintiff's contention that her prior office job involved heavy lifting. In this connection, the plaintiff cites to Bechtold v. Massanari, 152 F. Supp.2d 1340, 1345 (M.D. Fla. 2001), which states that, "[w]here it is clear that a claimant's past employment was a 'composite job,' an administrative law judge may not find a claimant capable of performing her past relevant work on the basis that she can meet some of the demands of her previous position, but not all of them." However, the law judge has not concluded that the plaintiff can return to a job where she is capable of performing only some of its demands. Thus, as explained previously, the law judge concluded that the job of office clerk does not require the performance of duties precluded by

the plaintiff's residual functional capacity.  Jackson v. Bowen, supra, 801 F.2d at 1293.  Therefore, this argument is also meritless.

C.  Lastly, the plaintiff argues that the law judge failed to fully develop the record because he did not recontact treating physician Dr. Jose Perez-Arce.  The plaintiff contends that 20 C.F.R. 404.1512(e) requires that Dr. Perez-Arce be recontacted because the law judge concluded that his opinion was incomplete and contradictory  (Doc. 19, pp. 14-16).[4]

The pertinent regulation provides:

(e) Recontacting Medical Sources.  When the evidence we receive from your treating physician ... is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.

(1)  ... We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does

---

[4]As pertinent here, the law judge stated (Tr. 16):

> At various times, Dr. Perez-Arce has informed Work Net Pinellas that the claimant was disabled. The undersigned concludes that the substance of these forms is unsupported and unreliable. Some of these forms have been incomplete and/or internally inconsistent. The content of the forms suggests that they were completed in a hurried fashion in an attempt to respond to the claimant's wishes as opposed to providing a complete medical source statement.

>not appear to be based on medically acceptable
>clinical and laboratory diagnostic techniques.

The plaintiff misapprehends the import of this regulation. As the Commissioner correctly responds, the threshold for recontacting the physician is that the evidence received is inadequate for a disability determination. Under the plaintiff's theory, the law judge would be required to recontact a physician every time he concluded that the doctor's opinion should be discounted. There is no such requirement in Social Security law. To the contrary, the law provides that a treating physician's opinion may be discounted when it is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This case did not involve a situation where the law judge thought that he lacked information upon which to make a determination regarding whether the plaintiff is disabled, but rather involved a situation where the law judge concluded that the doctor's opinions were not credible.

Furthermore, not only does the plaintiff's argument fail on the law, but it also fails on the facts, since Dr. Perez-Arce was recontacted. At the hearing, the plaintiff mentioned that she had an appointment with Dr. Perez-

Arce that day (Tr. 348).  At that point, the law judge requested an updated assessment from Dr. Perez-Arce (Tr. 349).  As a result, Dr. Perez-Arce wrote a note stating that he had reviewed his prior assessment "and found it is current" and that "conditions and limitations are unchanged" (Tr. 318).

Moreover, to the extent that the plaintiff is suggesting that the law judge did not sufficiently explain his discounting of Dr. Perez-Arce's opinion, that suggestion is meritless.  Notably, the law judge did not reject Dr. Perez-Arce's opinion only because it was incomplete and inconsistent.  Thus, with regard to the disability forms, the law judge found that they were not only incomplete and contradictory, but also "unsupported and unreliable" (Tr. 16).  The law judge explained further that he was rejecting the opinion of Dr. Perez-Arce in general because "[h]is opinion is somewhat extreme given the evidence of record" and was "even more extreme than the [plaintiff's] testimony" regarding her functional limitations (Tr. 17).  These conclusions were properly supported with citations to the record and are reasonable grounds to reject the opinion of a treating physician.  See Lewis v. Callahan, supra.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby **AFFIRMED**.

The Clerk shall enter judgment accordingly and close this case.

DONE and ORDERED at Tampa, Florida, this 23rd day of August, 2006.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE